UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH JOAN RAMOS,<br><br>        Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>        Defendant.<br>_____/ | Case No. 1:22-cv-00007-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.    INTRODUCTION

On December 30, 2021, Plaintiff Elizabeth Joan Ramos ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Acting Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.    BACKGROUND

Plaintiff was born on March 25, 1965, completed high school and can communicate in English. (Administrative Record ("AR") 19, 49, 60, 83, 211, 213, 219, 229.) Plaintiff filed a claim for DIB on November 14, 2019, alleging she became disabled on March 13, 2019, due to "COPD,

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 9.)

bilateral extremity with Medina, hp, and diabetes." (AR 49, 50, 60, 61, 212, 229.)

**A.     Relevant Evidence of Record[2]**

In August 2019, Plaintiff presented for an appointment to address her chronic obstructive pulmonary disease (COPD). She reported persistent shortness of breath and tightness in her chest. (AR 415.) She was treated with inhalers and was advised to continue using supplemental oxygen. (AR 416–17.) Plaintiff again complained of shortness of breath in September 2019. (AR 395. *See also* AR 426.) She was assessed with shortness of breath "with rest and activity off/on." (AR 396.)

Plaintiff was referred to Vijai Daniel, M.D. in February 2020 for management of COPD. (AR 459–61.) She reported recurrent cough, dyspnea[3], waking up constantly at night with difficulty breathing, and daytime sleepiness. (AR 459.) Dr. Daniel assessed Plaintiff with "severe dyspnea." (AR 460, 461.)

In March 2020, Plaintiff presented for a follow up appointment with Dr. Daniel with the same symptomology. (AR 496–99.) After reviewing Plaintiff's overnight oximetry, Dr. Daniel assessed "nocturnal hypoxia requiring oxygen." (AR 497.) Plaintiff was again assessed with severe dyspnea. (AR 498.)

In April 2020, Dr. Daniel completed a medical source statement. (AR 491–94.) He found Plaintiff's symptoms of dyspnea limit her to: walking no more than one to two blocks without rest or severe pain; standing 20 minutes to one hour at one time; sitting about four hours in an eight–hour workday; standing and/or walking less than two hours in an eight–hour workday; to "occasionally" lifting and/or carrying up 10 pounds; never stooping, crouching/squatting, climbing stairs, or climbing ladders. (AR 491–93.) Dr. Daniel found Plaintiff was likely to be "off task" five percent of an eight–hour workday, capable of low-stress work only due to severe dyspnea, and likely to have "good days" and "bad days" resulting in about four unplanned absences per month. (AR 493.)

Plaintiff presented for a follow up with Dr. Daniel in May 2020. (AR 648–51.) She reported the same symptoms as prior appointments. (AR 648.) She was assessed with severe

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.
[3] Dyspnea is the shortness of breath. *See* https://www.webmd.com/lung/shortness-breath-dyspnea#1.

2

dyspnea and given a new prescription for oxygen and a nebulizer. (AR 650.) In August 2020, Dr. Daniel prescribed Plaintiff a portable oxygen device. (AR 654.)

In October 2020, the telemedicine treater noted Plaintiff sounded like she had "[shortness of breath] on the phone." (AR 637.) Plaintiff complained of shortness of breath and wheezing. (AR 640.)

Plaintiff presented for a cardiovascular evaluation with Michael L. Krueger, D.O., in January 2021. (AR 553–55.) She reported shortness of breath with exertion. (AR 553.) Upon examination, Dr. Krueger noted decreased breath sounds bilaterally. (AR 554.)

**B.      Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on March 10, 2020, and again on reconsideration on May 21, 2020. (AR 89–92, 100–105.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 106–07.) The ALJ conducted a hearing on May 5, 2021. (AR 12–48.) Plaintiff appeared at the hearing telephonically with her attorney and testified as to her alleged disabling conditions and work history. (AR 18–29.)

   **1.      Plaintiff's Testimony**

Plaintiff testified that her last job was in a call center where she "spoke a lot," and she can no longer perform that job because she "run[s] out of breath." (AR 19.) She uses oxygen at nighttime and during the daytime when she runs short of breath, which is usually three to four days per week. (AR 20.) Plaintiff testified that her need for daytime oxygen arises when she tries to do too much and "moves too fast," and that heat, aerosol spray, and dust in the air adversely affects her breathing, including coughing and shortness of breath. (AR 20–21.) According to Plaintiff, she uses daytime oxygen for about an hour once symptoms start, and in 15-to-20-minute intervals thereafter when shortness of breath recurs. (AR 22.) She testified that "talking too much" causes shortness of breath, and that she runs out of breath after talking for two minutes. (AR 22.) She also runs out of breath taking a shower. (AR 26.)

Plaintiff testified that she has a friend that will come over and help with some of the housework such as sweeping, mopping, and taking out trash. (AR 26–27.) She can perform

"light" chores such as washing dishes, make her bed, and vacuum her small residence, but not daily. (AR 26–27.) Plaintiff stated she uses a nebulizer two or three times a week because she tries to use inhalers first. (AR 29.)

### 2. Vocational Expert's Testimony

A Vocational Expert ("VE") also testified at the hearing that Plaintiff had the following past work as: an enumerator for the Census Bureau, Dictionary of Operational Titles (DOT) code 205.367-054, which is light work per the DOT and as performed, with a specific vocational preparation (SVP)[4] of 2; a data entry clerk, DOT code 203.582-054, which is sedentary work and SVP 4; an inventory clerk, DOT code 222.387-022, which is medium work per the DOT and light as performed, with an SVP 4; and call center customer service representative, DOT code 239.362-014, sedentary work with an SVP 5. (AR 36–38.)

The ALJ asked the VE to consider a person of Plaintiff's age, education, and with his work experience and posed a series of hypotheticals about this person. (AR 38–.) The VE was to assume this person can lift and carry 10 pounds occasionally and less than 10 pounds frequently (AR 38), and can stand and walk for 15 minutes at a time and for two hours total (AR 38). The person: can sit for six hours; can occasionally climb stairs and ramps, stoop, crouch, kneel, and crawl, but cannot climb ladders, ropes, or scaffolds; cannot have concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, and poorly ventilated environments; cannot have concentrated exposure to extreme cold, extreme heat, humidity, and hazards including unprotected heights and moving machinery; cannot operate heavy machinery or drive; and the can frequently handle, finger, and feel bilaterally. (AR 38–39.) The VE testified that such a person could perform Plaintiff's past work of customer service representative. (AR 39–40.) The VE further testified that such person could perform other sedentary, SVP 2 jobs in the national economy, such as carding machine operator; DOT code 681-685-030; final assembler of optical goods, DOT code 713.687-018; dowel inspector; DOT code 669.687-014; nut sorter, DOT code 521-687-086; and table

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

worker; DOT code 739.587-182. (AR 43–44.) No work would be available, however, if the person were limited to occasionally fingering, handling, and feeling bilaterally or were to miss one day a month on a regular basis. (AR 44.)

Plaintiff's attorney posed a hypothetical involving a person who was limited to occasional, 10-minute increments of talking whether in person or over the phone. (AR 45–46.) The VE testified that the past job of customer service representative would be eliminated, but not the other five jobs identified. (AR 45–46.) The VE testified that a person who would be off task 15% of the workday would have none of the previously identified work available. (AR 46.)

**C.    The ALJ's Decision**

In a decision dated June 1, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 75–84.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 77–84.) The ALJ decided that Plaintiff met the insured status requirements of the Act through September 30, 2021, and she had not engaged in substantial gainful activity since March 13, 2019, the alleged onset date (step one). (AR 77.) At step two, the ALJ found Plaintiff's following impairments to be severe: COPD with moderate persistent asthma and obstructive sleep apnea, on nighttime supplemental oxygen for nocturnal hypoxia; congestive heart failure, with cardiomyopathy, tachycardia, and hypertension; morbid obesity in bariatric care; and venous status. (AR 77–78.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 78–80.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[5] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

5

capacity assessment at both step four and step five when we evaluate your claim at these steps.").

The ALJ determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR [§] 404.1567(a) except with additional limitations. Specifically, [Plaintiff] can lift and carry 10 pounds occasionally, less than 10 pounds frequently; can stand and walk 15 minutes at a time and for 2 hours total and can sit for 6 hours; can occasionally climb stairs and ramps, stoop, crouch, kneel and crawl; but cannot climb ladders, ropes or scaffolds. She cannot have concentrated exposure to pulmonary irritants, such as fumes, odors, dusts, gases, and poorly ventilated environments. She cannot have concentrated exposure to extreme cold, extreme heat, humidity and hazards, including unprotected heights and moving machinery. She cannot drive or operate heavy machinery. She can frequently finger, handle and feel bilaterally.

(AR 80–81.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 81.)

The ALJ determined that, given her RFC, Plaintiff could perform her past relevant work as a call center customer service representative (step four). (AR 83–84.) The ALJ concluded that Plaintiff was not disabled from March 13, 2019, through the date of the decision. (AR 84.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on October 28, 2021. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

### III.   LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec.*

7

*Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.") (citations omitted).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

### IV.   DISCUSSION

Plaintiff contends that the ALJ's partial rejection of Dr. Daniel's medical opinion was not supported by substantial evidence. (Doc. 15 at 10–16; Doc. 19 at 2–9.) Plaintiff further asserts

that the ALJ erred in evaluating Plaintiff's credibility. (Doc. 15 at 16–21; Doc. 19 at 9–14.) Plaintiff asks this Court to remand for payment of benefits, or alternatively for further proceedings. (*See id.*)

The Commissioner contends that the ALJ reasonably considered Dr. Daniel's opinion, and that substantial evidence supports the ALJ's evaluation of Plaintiff's symptoms. (Doc. 18.)

**A.   The ALJ Failed to Articulate Specific, Clear and Convincing Reasons to Discredit Plaintiff's Shortness of Breath Complaints**

  **1.   Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* The claimant is not required to show that her impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons" for the rejection.[6] *Id.* As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti,* 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009); 20 C.F.R. § 404.1529. Other factors the ALJ may consider include a claimant's work record and testimony from physicians

---

[6] The Court rejects the Acting Commissioner's contention that a lesser standard of review applies. (*See* Doc. 18 at 5 n.1.)

9

and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), *as amended* Apr. 9, 1996)).

**2.    Analysis**

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 24.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 24.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

The ALJ's evaluation of Plaintiff's subjective testimony is as follows:

> The undersigned considered [Plaintiff's] complaints that she needs to elevate her legs, but while her records showed venous status changes, they did not document in her treatment records a recommendation that she elevate her legs a specific portion of the day or confirm that she actually does so, and therefore the record does not support any need to elevate her legs that would not be accommodated within customary break or lunch periods. In addition, the undersigned could not find documentation she needed a cane or walker, and in fact, the undersigned notes she was able to ambulate without difficulty on recent examination (Ex. 19F at 60). The undersigned notes a lack of major mobility complications of the type contemplated under Social Security Ruling 19-2p or documented as a result of her obesity, and further notes a lack of major diabetic complications of the type contemplated under Social Security Ruling 14-2p.

(AR 83.) While the ALJ specifically notes Plaintiff's complaints regarding leg elevation and limited ambulation, nowhere in the decision does the ALJ discuss the functional limitations that Plaintiff identified at the administrative hearing related to her shortness of breath symptoms.

Specifically, and as set forth above, Plaintiff testified that excessive talking causes her to run out of breath, such that she can no longer perform her prior work as a call center customer representative. (AR 19–22.) She further testified she uses daytime oxygen three to four days per week to treat her breathing problems. (AR 20.)

Notably, the ALJ expressly endorsed the severity of Plaintiff's shortness of breath symptoms, finding, during the evaluation of Dr. Daniel's opinion evidence, that the "record as a whole . . . showed significant dyspnea on exertion."[7] (AR 83.) But the ALJ did not proffer any reason—specific, clear, convincing, or otherwise—for the implicit rejection of Plaintiff's hearing testimony that shortness of breath (dyspnea) impaired her ability to work. In so doing, the ALJ failed to set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

The Acting Commissioner asserts that the medical evidence "suggests [Plaintiff's] breathing issues were not as limited as her extreme allegations reflect." (Doc. 18 at 8.) The Court's review is limited, however, to the rationale provided by the ALJ and cannot consider post-hoc rationalizations and inferences advanced by the Acting Commissioner to justify the ALJ's rejection of Plaintiff's subjective testimony. *See Bray*, 554 F.3d at 1225 ("Long-standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting that a reviewing court "is constrained to review the reasons the ALJ asserts"). Here, the ALJ did not identify any objective medical evidence (or anything else) as a reason for rejecting Plaintiff's shortness of breath complaints.[8]

Because the ALJ failed to set forth clear and convincing reasons supported by substantial evidence in the record, the credibility determination cannot be upheld. The error was not harmless

---

[7] The Court notes that evidence of Plaintiff's dyspnea (shortness of breath), and treatment therefor, can be found throughout the medical record. (*See, e.g*, AR 460, 461, 491, 498, 553, 554, 640, 650, 654.)

[8] Even if they had, an ALJ may not base an adverse credibility determination solely upon the medical evidence. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Burch*, 400 F.3d at 681.

because it was not "inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038. If, after evaluating <u>all</u> of Plaintiff's testimony, the ALJ assesses a more restrictive RFC, this could influence the ultimate nondisability determination (*see, e.g.,* AR 45–46 (testimony by the VE that a limitation to occasional, 10-minute increments of talking would eliminate Plaintiff's past job of call center customer service representative).)

**B.     The ALJ's Error Warrants Remand for Further Proceedings**

When an ALJ commits error that is not harmless, "[t]he decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court." *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Furthermore, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981). On the other hand, "where the record has been fully developed such that further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke*, 379 F.3d at 593. *See also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016).

Here, the ALJ committed legal error that was not harmless, but, as Plaintiff recognizes (Doc. 15 at 22), this is not a case where further administrative proceedings would lack purpose. The ALJ failed to sufficiently articulate their credibility analysis with respect to Plaintiff's shortness of breath. This failure can be remedied on remand. *See, e.g., Bunnell v. Sullivan,* 947 F.2d 341, 348 (9th Cir. 1991) (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala,* 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints . . . ."); *Voisard v. Berryhill*, No. 2:17-CV-1023-EFB, 2018 WL 4488474, at *5 (E.D. Cal. Sept. 19, 2018) ("That the ALJ failed to provide sufficient reasons for discounting plaintiff's subjective testimony in this

12

instance does not compel a finding that he is unable do so."). Notably, although the ALJ failed to properly reject Plaintiff's credibility using the proper legal standards, it is not clear that Plaintiff would be found to be disabled if her testimony were credited as true. Therefore, the Court will order the matter remanded for the ALJ to provide sufficient findings.

**C.     The Court Declines to Determine Plaintiff's Remaining Assertion of Error**

As the Court finds that remand is appropriate for the ALJ to reconsider Plaintiff's subjective complaints and reassess Plaintiff's RFC, the Court need not address Plaintiff's allegation of error concerning the ALJ's current RFC assessment and its failure to account for limitations opined by Dr. Daniel. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Rendon G. v. Berryhill*, No. EDCV 18-0592-JPR, 2019 WL 2006688, at *8 (C.D. Cal. May 7, 2019); *Harris v. Colvin*, No. 13-cv-05865 RBL, 2014 WL 4092256, at *4 (W.D. Wash. Aug. 11, 2014); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings consistent with this Order.

The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Elizabeth Joan Ramos and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:     **April 24, 2023**                      /s/ *Sheila K. Oberto*
                                                   UNITED STATES MAGISTRATE JUDGE

13